### STEWART v. GREGG.

1. DISTRESS FOR RENT—PURCHASER.—The purchaser of the landlord's title under judicial sale is entitled to the subsequent rent afterwards due by a tenant under lease, and may recover the same by action at law, but, in the absence of evidence to show that the tenant has attorned to the new landlord, payment of such rent may not be enforced by distress.

2. IBID.—Distress for rent is authorized only when a sum certain is reserved for rent, and, therefore, may not be enforced by a purchaser of land against a tenant of the former owner, where the rent reserved was fifty-four hundred pounds of lint cotton for the land and two mules—how much of this rent was for land and how much for the two mules being uncertain.

Before HUDSON, J., Florence, May, 1893.

This was an action of claim and delivery by A. S. Stewart against A. M. Gregg and Benjamin Graham, commenced November 10, 1892.

Plaintiff requested the following instructions to the jury:

1. That in order for the jury to find for the defendant, they must be satisfied by the preponderance of the evidence, that a tenancy existed between defendant and plaintiff, and that in the alleged lease a sum certain was reserved for rent. 2. That if the jury believe that the relation of landlord and tenant existed between the plaintiff and M. A. Bowen, and that the plaintiff took possession of the premises under her lease, and that the lease had not expired when defendant purchased the lands, then the tenancy was a continuing one, and a payment of the rent to his landlord under the existing lease was proper. 3. That a distress for rent of plaintiff's property by a claimant out of possession, during and before the expiration of the lease under which he entered, was improper procedure as against him, and that the jury should find for the plaintiff. 4. That when there are other remedies provided by statute for the

enforcement of agricultural liens, a distress was an improper procedure, unless the defendant proves by preponderance of evidence that there was a lease written, or by parol, in which a certain sum was reserved for rent; and in order for a lease to exist, there must be a mutuality of agreement between the parties thereto.

The judge charged as follows:

I will not have a great deal to say to you in expounding the law of the case, and in what little I have to say to you, I will not be able to instruct you according to the request of the counsel for the plaintiffs in entirety.  In so far as his request is in accordance with what I have to say to you, I will charge you.  In so far as his request is not in accordance with what I have to say to you, I refuse the request.  I think that the law bearing upon this case is simple, and in the present case when you get to the facts you will not find them complicated. Law is said to be based upon common reason and common sense.  It certainly is intended to be.

Now, it is an undisputed fact in the present case, that in the fall of '89 Mr. Stewart rented from Mrs. Bowen a certain plantation in your county called the "Crowfoot" place, which Mrs. Bowen had at that time in her posession and claimed to be the owner of it; that the written lease was for three years, 1890, '91, and '92, and so long as the relation of landlord and tenant existed between Mr. Stewart and Mrs. Bowen, he was bound to pay the rent to Mrs. Bowen.  The contract which he had with her was of such a character that if he failed in any one year to pay the rent, Mrs. Bowen could have distrained for rent.  The contract is sufficient warrant for distress.  It is also undisputed, that on the 6th day of January, 1892, Mrs. Bowen's right, title, and interest to that land was sold by a decree of the court in the proceeding to marshal assets.  At that sale Mr. Graham, the present defendant, became the purchaser.  He bought all the rights, title, and interest of Mrs. Bowen, and became the landlord.  He who was the tenant of Mrs. Bowen became by operation of law the tenant of the new landlord, and was bound to atorn to the new landlord in such regard.  If, after that, he

recognized Mrs. Bowen as landlord and paid Mrs. Bowen the rent, knowing the sale had taken place, the title had changed hands, why he paid at his peril. That is common sense.

If, when you buy a tract of land on which there lived a tenant, just as soon as you get the title you have the right to demand of the tenant rent, and he is bound to pay you, and should you notify him that you are the landlord and he goes and pays the rent to the original landlord, he incurs the risk of paying the rent again. It is necessary that he should know the change had taken place. Did Mr. Stewart know this? He says himself that he attended the sale, heard the sale, and that he knew Mr. Graham purchased the land. Subsequent to that time, in the month of February, the agent of Mr. Graham went to talk about the matter, and informed him that the title had changed, and that the new landlord would expect the rent paid the new landlord; whereupon Mr. Stewart, who is presumed to know the law, to know what his duty was, what his legal obligation was, and was bound by it—whether he knew what it was or not, he is presumed to know what it is and bound by it, whether he knew it or not—Mr. Stewart, of his own free will and a correct knowledge of these facts, paid eight bales of cotton to Mrs. Bowen, and in doing so he gave it away. He had no right to do it, and he did it at his peril. The new landlord was not getting any return for rent due that year. The landlord, Graham, by Mr. White, makes the distress, the paper in controversy—that is, has the landlord the right to distress or seize under distress for rent? The landlord has the right to distrain for rent. Therefore, the tenant cannot maintain his action to recover it back. The landlord has a right to seize upon the proceeds in payment of his rent. In this case, Mr. Stewart got the property back into his possesssion, and gave bond to pay the rent if the suit goes against him.

I am obliged to instruct you, gentlemen, under the undisputed testimony, that in this case Mr. Stewart owed the rent to Graham, although he paid it to Mrs. Bowen. He can't excuse himself that way at all. He had fair warning—fair warning. Therefore, the purchaser, Mr. Graham, had the right to distrain for his rent due.

The jury being out in the room for some time, the court ordered them brought back into court for additional instructions, and further charged as follows:

Mr. Foreman and gentlemen, I did not wish my instructions in this case to be misunderstood, and your delay caused me to apprehend that you might have misunderstood my instructions. I wish to say that the responsibility of your verdict rests with me almost entirely, and I have left very little for you to consider, and you are to accept the law as submitted to you by the court. You are not responsible for the instruction. I say to you that, under the circumstances and the testimony, the defendant is entitled to a verdict. Because the plaintiff says he was at that sale, and that the land was sold, and bought by Mr. Graham, and subsequently, in February, Mr. White went down and spoke to him about the rent. Under the circumstances in the testimony the defendant Graham is entitled to recover. You can't find a verdict for the plaintiff under the facts; your verdict must be for the defendant. The only question you have to consider is the value of the property.

The verdict was for defendants, and plaintiff appealed on the following grounds:

I. Because his honor erred in refusing to charge the jury that in order for them to find for the defendant, they must be satisfied by the preponderance of evidence that a tenancy existed between the plaintiff and the defendant, and that a sum certain was agreed upon and reserved for such rent. II. Because his honor erred in holding that there was a new contract between plaintiff and defendant for rent of the premises in 1892, when the lease between plaintiff and M. A. Bowen for same would not expire before 1893. III. Because his honor, in holding that such new contract existed, erred in holding that a definite rental or sum certain was not necessary to authorize the new landlord to distrain for rent. IV. Because his honor erred in refusing to charge the jury that where there are other remedies provided by statute for the enforcement of agricultural liens, a distress was an improper procedure, unless the defendant prove by preponderance of evidence that there was a lease, written or

by parol, in which a sum certain was reserved for such rent.
V. Because his honor erred in charging the jury: "You can't
find a verdict for the plaintiff under the facts; your verdict
must be for the defendant," as it is respectfully submitted that
the sufficiency of the evidence based upon the testimony or
"facts," is entirely a question for the jury. VI. Because his
honor erred in charging the jury that under the facts and cir-
cumstances of this case they must find a verdict for the defend-
ant, when it is respectfully submitted that the warrant upon
which the distress was made was illegal, null, and void. VII.
Because his honor erred in charging the jury that there were
no disputed facts, and that they must find for the defendant,
when it is respectfully submitted that it was a question for the
jury to determine as to whether or not there was a contract of
lease, the rent paid or rent due, and whether or not there was
a rent certain reserved between the parties.

*Messrs. McNeil & Hursey*, for appellant.

*Messrs. Allen J. Green* and *John T. Sloan, jr.*, contra.

October 16, 1894. The opinion of the court was delivered by

MR. JUSTICE McIVER. This was an action to recover pos-
session of sundry articles of personal property alleged to have
been unlawfully taken from the possession of the plaintiff by
the defendants. The defendants justified the taking under a
distress warrant for rent. The following facts seem to be undis-
puted: On the 12th day of November, 1889, the plaintiff leased
from one M. A. Bowen a certain tract of land, the latter agree-
ing in the lease to furnish two mules for cultivating said place,
for the term of three years, commencing on the 1st day of Jan-
uary, 1890, the lessee agreeing to pay to the lessor "as rent for
the same" 5,400 pounds of lint cotton annually, to be delivered
on or before the 15th day of October in each year during the
currency of the lease. There is no copy of this lease incorpo-
rated in the "Case," but as the same was offered in evidence,
the court at the hearing, under the rule, called for a copy of
the lease, which was furnished, and is herewith filed. On the
4th day of January, 1892, the premises leased, along with other

property, was sold by the order of the Court of Equity under proceedings for that purpose, to which the said M. A. Bowen was a party, and the premises leased was bought by the defendant Graham, of which sale and purchase the plaintiff had notice at the time, he having been present at the sale. Soon after this sale the plaintiff was called on by the agent of Graham, doubtless for the purpose of advising him of the said purchase, and notifying him that Graham would claim the rent for the year 1892.

On the 14th of October, 1892, the plaintiff delivered to the said M. A. Bowen eight bales of cotton on account of the rent for that year. Learning of this, the defendant Graham, through his agent, issued his distress warrant, addressed to his codefendant Gregg, authorizing and requiring him "to make distress of all goods and chattels of the said A. S. Stewart, so that you may collect 4,710 pounds of lint cotton, in merchantable condition, of the value of the sum of $345.50-100, for rent in arrears and due me on the 15th day of October, 1892." Under this warrant the said Gregg seized the property sued for in this action, and the same was afterwards replevied by the plaintiff. There is some conflict in the testimony as to what passed between the plaintiff and the agent of the defendant Graham, when the latter called upon the former in February, 1892, soon after the sale, as well as in a subsequent interview between those parties in June, 1892, which, under the view we take of the case, need not be stated. It appears from the testimony that before the distress warrant was issued, some calculation was made by the attorney of Graham with a view to ascertain the amount due Graham for rent of the land, in which, after deducting so much cotton as would pay for the rent of the mules, estimated at $50, the balance of the 5,400 pounds of cotton, to wit: 4,710 pounds, valued at something less than eight cents per pound—the amount cotton was understood to be worth on the 15th of October, 1892—would produce the amount stated in the distress warrant, viz: $345.50.

After the testimony was closed, the plaintiff submitted certain requests to charge, and the Circuit Judge, without passing upon these requests specifically, proceeded to charge the jury

as set out in the "Case," and these requests with the charge should be set out in the report of the case. Under this charge the jury found a verdict in favor of the defendants—that they were entitled to the property in dispute, and in case the same cannot be delivered, then they found for the defendants the sum of $345.50, the value thereof. Judgment having been entered upon this verdict, the plaintiff appeals upon the several grounds set out in the record, which should likewise be embraced in the report of the case. Without undertaking to examine these grounds *seriatim*, we propose to point out what we consider to be errors in the charge.

When premises held by a tenant under a lease are sold, during the currency of the lease, either by the landlord himself or by process or order of the court, there can be no doubt that the purchaser becomes entitled to the rent from the time of his purchase, and may recover the same, under an action for use and occupation, from the tenant, provided he has notice of such sale before he pays the rent to his landlord. *Moore* v. *Turpin & Powers*, 1 Speer, 33; *Snyder* ads. *Riley, Ibid.*, 272. But whether such purchaser can distrain for the rent due him, without any evidence that the tenant has attorned to him, is a very different question. The remedy by distress, like an attachment, is a very stringent proceeding, and the courts will always require a strict compliance with the requirements of the law. Indeed, there is more reason for this in a case of distress than in an attachment, for in the former the proceeding is by the act of the party interested, while in the latter the interposition of an officer of the court is required. In *Jacks* v. *Smith*, 1 Bay, 315, it was held that to justify a distress, there must be some lease, either written or parol, by which a sum certain is reserved for rent. In that case the facts were, that the plaintiff had rented the premises from one Bourke, and the same were afterwards sold for the debts of Bourke, and purchased by the defendant Smith, who attempted to justify the taking of the goods in question under a distress warrant, resting his claim solely on his deed, but offered no evidence of any written or parol lease to the plaintiff. The court held as above stated, but added that an action for use and occupation would lie

against the tenant for the time he held the house after it was sold. It seems that the case just cited is so nearly identical with the case now under consideration as to be decisive of it. The same doctrine was held in the subsequent case of *Smith* v. *The Sheriff of Charleston District,* 1 Bay, 438, and the case of *Jacks* v. *Smith, supra,* was expressly affirmed. Neither of those cases has ever, so far as we are informed, been overruled or even questioned by any subsequent decision.

The cases of *Moore* v. *Turpin & Powers* and *Snyder* ads. *Riley, supra,* cited and relied upon by respondents' counsel, were both actions for use and occupation, and there is nothing in either of them which warrants the idea that a purchaser of leased premises can distrain for rent accruing after his purchase, though he may maintain an action for use and occupation. Counsel for respondent also relies upon certain language found in the opinion of the court in *Reid* v. *Stoney,* 1 Strob., at page 188; but the point we are considering was not made, and did not arise, in that case, and, therefore, the remark relied upon cannot be regarded as anything more than *obiter dictum,* if, indeed, it is even that. In that case the premises had been leased to one Thompson by Samuel Reid in his lifetime, who, by his will, directed that his estate be kept together during his wife's lifetime, and after her death to be divided between his children, one of whom was the plaintiff and the other the wife of defendant Stoney. The parties undertook, by agreement, to make an informal partition, which, however, the Court of Equity refused to confirm, whereby the estate was to be divided into three parts—one to the widow for life, and one to each of the children; the storehouse being on the portion assigned to Mrs. Stoney. Thompson, the lessee of the storehouse from the testator, sold the stock of goods therein to the plaintiff, who took possession, and the same were soon after seized by Stoney, who undertook to justify his seizure of the goods under his distress warrant. The court held that the husband of a minor, daughter of the testator, has no right, under a title derived from an informal partition of the estate, unconfirmed by the Court of Equity, to distrain for rent due the estate; and that the execu-

tor alone has the right to distrain for rent due the estate during the lifetime of the wife.

It is very manifest that no such question as we are considering arose in that case. In delivering the opinion of the court, his honor, Judge Evans, uses the language quoted by respondents' counsel, as follows: "Without the legal estate, he could not distrain for rent due by one who did not enter under him, and who was in no way liable to him, *unless the estate of the original landlord had been assigned to him.*" Now, whether the learned judge intended the words which counsel has italicized as above to convey the idea that the defendant could not distrain unless the legal estate had been assigned to him, or only meant to say that the tenant would be in no way liable to him unless the legal estate had been assigned to him, is at least questionable; and judging from the well known fact that Judge Evans was noted for his familiarity with the decisions of our court, we think there is more reason to say that he only meant the latter and not the former, for the presumption is that he was familiar with the decisions of *Jacks* v. *Smith* and *Smith* v. *Sheriff of Charleston*, cited above, which showed the law to be that a purchaser from a landlord could not *distrain* for rent, although the tenant would be liable in an action for use and occupation to such purchaser. But whether he meant the one thing or the other is immaterial, for certainly a mere passing remark of this kind cannot be regarded as sufficient to overturn two solemn decisions of the court of last resort.

We think that the Circuit Judge erred in refusing plaintiff's first request to charge, and in charging that Graham had the right to distrain for rent.

But again, there can be no doubt that in order to justify a distress for rent, there must be a lease, either written or parol, by which a sum *certain* is reserved for rent (*Jacks* v. *Smith, supra, Smith* v. *Sheriff of Charleston, supra, Marshall* v. *Giles,* 2 Tread. Con. R., 637), though it need not be reserved as rent *eo nomine. Price* v. *Limehouse,* 4 McCord, 514. Now as the testimony as to what passed between the plaintiff and the agent of defendant Graham after the sale was conflicting, if it should be sought to draw therefrom the conclusion that there was a

parol lease, then that question should have been left to the jury, which was not done, and, therefore, we must look alone to the terms of the written lease, of which the defendant Graham claims to be the assignee. By reference to that instrument we find that Mrs. Bowen, the lessor, agreed to lease to Stewart, the lessee, the tract of land known as the Crowfoot place, and also "to furnish two mules for cultivating said place; and the lessee agrees to pay to the lessor as rent for the same 5,400 pounds of white lint cotton annually," &c. Now what was the plaintiff to pay the 5,400 pounds of cotton for? The language is explicit, "for the same"—that is, for the mules as well as for the land. This is manifestly the construction placed upon the lease by the attorney for the defendant Graham, for in making his calculation as to the amount of rent due, preparatory to issuing the distress warrant, he expressly recognizes that a part of the 5,400 pounds of cotton was to be paid for the use of the mules, and the balance *only* for the rent of the land.

Here clearly was an element of uncertainty as to the amount of *the rent of land*, for which alone could the defendant distrain even under his own view of the law. Who was to determine what portion of the 5,400 pounds of cotton was due for the rent of the land and what portion for the mules? Surely the defendant had no right to determine this question, as he assumed to do. The defendant does not pretend to claim anything for the rent of the mules, and could not do so, for he never bought the mules. All that he does claim, and all that he can by any possibility claim, is so much of the 5,400 pounds of cotton as was due for the rent of the land; and what that amount is remains absolutely uncertain. So that to say nothing of what may be due for the use of the molasses mill, which the plaintiff was allowed, without objection, to testify constituted a part of the consideration for the lease, although it is not mentioned in that instrument, and resting our conclusion solely upon the terms contained in the written lease, it is clear that there was such an uncertainty as to the amount reserved for *the rent of the land*, as would forbid the defendant from enforcing the payment of the same by distress. While, therefore, the defendant Graham, as the assignee, practically, of so much of the lease as secures

26—42

the rent of land, might, in an action for use and occupation, recover so much of the rent reserved as is due for the land, by introducing evidence to show how much that is, he certainly cannot, by distress, enforce the payment of an uncertain and unascertained amount due for the rent of the land. So that, as it seems to us, in either view of the case, the seizure of the plaintiff's property was not justified by the distress warrant.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.